STATE OF CONNECTICUT **FILED** :     **ss:**    **CITY OF NEW HAVEN**

COUNTY OF NEW HAVEN 2018 MAR 22 P 3: 41     **March 22, 2018**

U.S. DISTRICT COURT
NEW HAVEN, CT.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, James M. Lawton, a Special Agent of the Federal Bureau of Investigation ("FBI"), New Haven Division, being duly sworn, deposes and states:

1.    I am a Special Agent of the FBI and have been so employed since May 1996. Prior to joining the FBI, I was a Military Police Officer in the United States Army for approximately three years. I was also a police officer in the City of Pittsburgh, Pennsylvania, for approximately two years. In addition to my prior experience as a law enforcement officer, I have participated in classes devoted to narcotics enforcement, homicide investigations, violent street gangs and electronic surveillance. During my tenure as a federal law enforcement officer, I have participated in investigations into financial fraud, fraud against the government, interstate transportation of stolen property, kidnapping, illegal distribution of controlled substances, homicide, extortion and crimes of violence perpetrated in furtherance of organized criminal activity. In addition, I served as the Safe Streets Gang Task Force Coordinator for two years; I have coordinated dozens of controlled purchases of illegal drugs utilizing confidential sources, cooperating witnesses and undercover police officers; I have written, obtained and coordinated the execution of over 50 search warrants and hundreds of arrest warrants. I was formerly assigned to the FBI Organized Crime Task Force.

2.    I am currently investigating WILLIAM S. TORTORA for the following offenses: 18 U.S.C. §844(i) (Malicious Destruction of a Building or Vehicle By Means of Fire), 18 U.S.C.

§2252A(a) (Receipt and Distribution of Child Pornography), and 18 U.S.C. § 2252A(a)(5) (Possession of Child Pornography) (collectively, the "TARGET OFFENSES").

3.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—a blue 32G thumb drive with serial number 16 AA0 17 BM 1801258828 —which is currently in the possession of the Office of the State's Attorney, Judicial District of Ansonia-Milford, 14 West River Street, Milford Connecticut (hereinafter the "TARGET DEVICE"), and the extraction from that property of electronically stored information described in Attachment B.

4.      I have based this affidavit on my own personal knowledge as well as information provided to me during the course of my investigation by other law enforcement officers.  This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## LEGAL AUTHORITY

5.      Title 18, United States Code Section 844(i) provides that "[w]hoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce" is guilty of a felony offense.

6.      Title 18, United States Code Section 2252(A)(a) prohibits a person from knowingly receiving or distributing any child pornography, as defined in 18 U.S.C. §2256(8), when such child pornography was either mailed or shipped or transported in or affecting instate of foreign commerce by any means, including by computer.

7.      Title 18, United States Code Section 2252A(a)(5) prohibits a person from knowingly possessing any child pornography, as defined in 18 U.S.C. § 2256(8), when such child

pornography was either mailed or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer, or when such child pornography was produced using materials that had traveled in interstate or foreign commerce.

8. The following definitions apply to this Affidavit:

a. "Minor," as used herein, is defined by 18 U.S.C. § 2256(1) to mean any person under the age of eighteen years.

b. "Child Pornography," as used herein, includes the definition in 18 U.S.C. § 2256(8) (any visual depiction including any photograph, film, video, picture, or computer or computer generated image or picture, whether made or produced by electronic, mechanical, or other means of sexually explicit conduct, where (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; (B) such visual depiction is a digital image, computer image, or computer generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or (C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct), and also includes any visual depiction, the production of which involves the use of a minor engaged in sexually explicit conduct. 18 U.S.C. § 2256(8).

c. "Visual depiction" includes undeveloped film and videotape, data stored on computer disk or by electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format. 18 U.S.C. § 2256(5).

3

d. "Sexually explicit conduct" means actual or simulated (i) sexual intercourse, including genital genital, oral genital, anal genital, or oral anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the genitals or pubic area of any person. 18 U.S.C. § 2256(2)(A).

## INVESTIGATION BACKGROUND

9.     On February 3, 2018, an incident occurred at the Echo Hose Fire House at 367 Coram Avenue in Shelton, Connecticut. After a function at the fire house, members of the fire department set fire to a white pickup truck parked in the parking lot behind the firehouse, causing damage to the vehicle and to the fire house door.

10.     Surveillance video from the scene obtained by members of the Shelton Fire Department show as follows: that at approximately 8:59 p.m. on February 3, 2018, WILLIAM S. TORTORA, Gregory Bomba and James Leonard were standing at the back of a white pickup truck owned by TORTORA and parked in the lot behind the Echo Hose Fire House. Bomba and TORTORA then lighted what appeared to be cardboard boxes that were in the bed of the truck. After the boxes started to ignite, Bomba and TORTORA moved the boxes around the bed of the tuck to help the fire breathe. After a few minutes, the fire spread and the entire bed of the truck was engulfed in flames. TORTORA held a cellular telephone in his hand and appeared to be videotaping or photographing the incident. At one point, the fire appeared to be approximately five feet high. TORTORA then began taking the burning boxes out of the bed of the truck and threw them around the parking lot. One box landed underneath a City of Shelton-owned Chevrolet Impala that was parked in the lot.

11.     After about five minutes after the fire started, a fourth individual identified as Tom DeMarco exited the fire house and attempted to put out the fire with a fire extinguisher. TORTORA then got into the truck and drove away while the fire was still burning in the bed of his truck.

12.     On February 13, 2018, members of the Shelton Police Department observed the parking spot where the fire was started and saw black marks from the fire on the fire house door and on the front of the City of Shelton-owned Chevrolet Impala. According to the Assistant Fire Chief of the Shelton Fire Department, the damage to the fire house door is estimated to be $450.00.

13.     On February 22, 2018, members of the Shelton Police Department interviewed TORTORA at the Echo House Fire House while TORTORA cleaned out his belongings following his suspension from the fire department. TORTORA stated that Greg Bomba had started the fire in his truck and that he (TORTORA) removed the boxes from the bed of his truck and then left. When the Shelton Police officers confronted TORTORA with the fact that surveillance video of the incident showed TORTORA lighting the fire with Bomba, TORTORA stated that he did not recall the incident because he was drunk. TORTORA also explained that he did not have a video of the incident on his cellular telephone but that he did take a photograph of the fire, which he had since deleted. TORTORA allowed the Shelton Police officers to photograph his truck. Officers noticed a large oval burn mark that spanned from one wheel well to the other. Officers seized TORTORA's Samsung cellular telephone in anticipation of securing a search warrant for the device.

14.     On February 23, 2018, members of the Shelton Police Department applied for and were granted search and seizure warrants by the State of Connecticut Superior Court for

TORTORA's Samsung cellular telephone to look for evidence related to the arson.[1] The telephone was provided to the Stratford Police Department to have an officer trained in cellular telephone extraction forensically download the contents of the phone. On February 27, 2018, the Stratford Police Department returned the actual cellular telephone to the Shelton Police Department along with one thumb drive containing the contents of the telephone and the Cellebrite UFED software used to view the contents of the cellular telephone extraction. The Stratford Police Department provided a second thumb drive—the TARGET DEVICE-- containing the same contents and Cellbrite software to the Office of the State's Attorney. The TARGET DEVICE has not been examined and remains in the custody of the Office of the State's Attorney in Milford.

15. On February 27, 2018, Shelton Police Department Detective Richard Bango opened thumb drive provided to the Shelton Police Department of TORTORA's cellular telephone and discovered pornographic photographs of young women and girls. Detective Bango stopped looking at the drive and contacted Shelton Police Officer Petrillo who is trained in computer forensics. Officer Petrillo viewed two photographs identified as images 335 and 339 and observed them to be of two young girls performing sexual acts. Officer Petrillo estimated the girls to be four to five years old. The Shelton Police officers then stopped examining the thumb drive but observed that there appeared to be thousands of photographs from TORTORA's phone. On March 1, 2018, members of the Shelton Police Department applied for and were granted search and seizure warrants by the State of Connecticut Superior Court for TORTORA's Samsung cellular telephone and for his residence to look for evidence related to the possession of child pornography.

---

[1] Based on my training and experience, I know that Samsung phones are manufactured outside the state of Connecticut.

16. On March 2, 2018, TORTORA was arrested by the State of Connecticut and charged with second-degree arson, second-degree reckless endangerment, second-degree criminal mischief and conspiracy. He remains detained on a $250,000 bond.

17. On March 15, 2018, a confidential informant ("CI") met with members of the FBI in connection with the investigation of TORTORA. The CI is a law enforcement employee who is voluntarily providing information to the FBI. According to the CI, TORTORA is a volunteer firefighter with the City of Shelton's Echo Company. The CI explained that TORTORA's nickname in Shelton is "The Torch" because he is believed to have committed numerous acts of arson stemming back to at least 2014. The CI stated that individuals have advised him/her that TORTORA has stated that he has committed acts of arson on behalf of other individuals. ██████

██████████████████████████████████████████████

██████ TORTORA's brother is James Tortora, who is the Fire Marshal for the City of Shelton.[2]

## BACKGROUND ON CELLULAR TELEPHONES

18. Based on my knowledge, training, and experience, I am aware that a mobile or cellular telephones, commonly referred to as a cell phone, and tablet devices, are handheld wireless device used for voice and data communication through radio signals. A cell phone, usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, cell phones and tablets offer a broad range of other capabilities. These capabilities include: running software or applications; storing contact names and phone numbers in electronic address books, commonly referred to as a

---

[2] S██████████████████████████████████████████

cell phone user's contacts; sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Cell phones and tablets may also include geo-location and global positioning system ("GPS") technology for determining the location of the device.

19.     Based on my knowledge, training, and experience, I know that data storage devices like cell phones can store information, pictures, and videos for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on such devices. This information can sometimes be recovered with forensics tools. Data storage devices can store the equivalent of thousands of pages of information.

20.     Based on my training and experience, I know that evidence on data storage devices drive can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

21.     A person with appropriate familiarity with how data storage devices work may, after examining this forensic evidence in its proper context, be able to draw conclusions about how data storage devices were used, the purpose of their use, who used the devices, and when.

22.     The process of identifying the exact electronically stored information on data storage devices like cell phones that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer or data storage device is evidence may depend on other information stored on the device and the application of knowledge about how that device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

23.     Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

24.     Based upon my training and experience, I know that when a cell phone is used to take a photograph or video, the device will often store information beyond the photograph itself. This "meta data" can include, the size of the file, its location on the device, the time and date of the photograph or video, GPS coordinates for where the photograph or video was taken, whether and when it has been accessed or modified, what device took the photograph or video, and other properties or data regarding the photograph or video.

25.     The analysis of electronically stored data, whether performed on site or in a laboratory or other controlled environment, may entail any or all of several different techniques. Such techniques may include, but shall not be limited to, surveying the file directories and any individual files they contain (analogous to looking at the outside of a file cabinet for the markings it contains and opening a drawer capable of containing pertinent files, in order to locate the evidence authorized for seizure by the warrant); conducting a file by file review of the data; examining all the structured, unstructured, deleted, and free space data on a particular piece of media; opening or reading the first few pages of each file in order to determine their precise contents; scanning storage areas to discover and possibly recover deleted data; scanning storage areas for deliberately hidden files; and performing electronic key word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are related to the subject matter of the investigation.

26.     Digital files or remnants of such files can be recovered months or even years after they have been downloaded or copied onto computers and data storage devices, deleted, or simply

viewed via the Internet. Electronic files downloaded or copied onto computers and data storage devices can be stored for years at little to no cost. Even when such files have been deleted, they can be recovered months or years later using readily available forensic tools. When a person "deletes" a file, the data contained in the file does not actually disappear; rather, that data remains on the device until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space   that is, in space on the device that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space for long periods of time before they are overwritten.

27.     In addition, a device's operating system may also keep a record of deleted data in a "swap" or "recovery" file. Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or cache. The browser typically maintains a fixed amount of space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages. Thus, the ability to retrieve residue of an electronic file from a device depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and habits. As noted, it is not at all uncommon to recover files deleted months or years before.

28.     *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the TARGET DEVICE consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

29.    *Manner of execution.*  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CHILD PORNOGRAPHY PRODUCER AND COLLECTOR CHARACTERISTICS

30.    Based upon my training and experience, as well as from information provided to me by other law enforcement personnel involved in the investigation of cases involving the sexual exploitation of children, I believe the following traits and characteristics are generally found to exist and be true in cases involving individuals who produce and/or collect child pornography:

a.    Individuals who view child pornography are persons who have a sexual attraction to children.  They receive sexual gratification and satisfaction from sexual fantasies fueled by depictions of children that are sexual in nature.

b.    Individuals who view child pornography also view and/or collect other sexually explicit materials, which may consist of photographs, magazines, motion pictures, video tapes, books, slides, computer graphics or digital or other images for their own sexual gratification.

c.    Individuals who view child pornography often seek out like minded individuals, either in person or over the Internet, to share information and trade depictions of child pornography and child erotica as a means of gaining status, trust, acceptance and support. The different Internet based vehicles used by such individuals to communicate with each other include, but are not limited to: P2P, e mail, e mail groups, bulletin boards, Internet Relay Chat ("IRC"), newsgroups, instant messaging, and other similar vehicles.

d.    Individuals who view child pornography rarely, if ever, dispose of their sexually explicit materials and may go to great lengths to conceal and protect from discovery, theft, and damage their collections of illicit materials.  They almost always maintain their collections in private and secure locations such as their homes or on electronic storage devices, and they frequently create copies of their collections on one or more other electronic storage devices.

## CONCLUSION

31.    Based on the above, I believe there is probable cause to believe that the TARGET DEVICE, as more fully described in Attachment A to this affidavit, contain contraband, fruits, instrumentalities and evidence of the TARGET OFFENSES, or material otherwise criminally possessed, or property that is or has been used as the means of committing the TARGET OFFENSES.

32.    In consideration of the foregoing, I respectfully request that this Court issue an order authorizing the search and seizure of the contents of the TARGET DEVICE, as more fully described in Attachment A, for the items, materials and records more specifically identified in Attachment B.

33.    I respectfully request that this Court issue an order sealing all papers submitted in support of this application, including the application and search warrant, for a period of sixty (60) days.  I believe that sealing this document is necessary because the warrant is relevant to a covert federal investigation.  Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing federal investigation and may severely jeopardize its effectiveness by, for example, causing targets to destroy or hide evidence.

In addition, I believe sealing is necessary to identify, locate and ensure the safety of any minor victims depicted in the images of child pornography on TORTORA's phone.

_____
James M. Lawton
Special Agent

Subscribed and sworn to before me this 22 day of March , 2018

/s/ Sarah A. L. Merriam, USMJ
_____
SARAH A.L. MERRIAM
UNITED STATES MAGISTRATE JUDGE

**ATTACHMENT A**

**Property to Be Searched**

The property to be searched is the following item, which is presently located at the Office of the State's Attorney, Judicial District of Ansonia-Milford, 14 West River Street, Milford, Connecticut :

A blue 32G thumb drive with serial number 16 AA0 17 BM 1801258828 (the "TARGET DEVICE").

# ATTACHMENT B

## Particular Items to Be Seized

1.     All records on the Target Device described in Attachment A that relate to violations of 18 U.S.C. §844(i) (Malicious Destruction of a Building or Vehicle By Means of Fire), 18 U.S.C. §2252A(a) (Receipt and Distribution of Child Pornography), and 18 U.S.C. § 2252A(a)(5) (Possession of Child Pornography) (collectively, the "TARGET OFFENSES") since January of 2017, including:

a.     Photographs any arson, fire or explosive events;

b.     Any and all communications pertaining to any arson, fire or explosive events;

c.     In any format or media, all originals, copies and negatives of child pornography or visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256.

d.     Any and all communications pertaining to sexual enticement of minors or the production or possession of child pornography or visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256.

e.     Any and all names, addresses, contact information or lists of names, addresses or contact information, in any format, of those who may have been contacted in connection with the TARGET OFFENSES.

2.     Evidence of user attribution showing who used or owned the Target Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including

any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.